UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

VALERIE ANDERSON
    Plaintiff

-vs-                                                    Case No.
                                                  Hon.
                                                  **DEMAND FOR JURY TRIAL**

CARS TRADE, INC.,
    Defendants.

## **COMPLAINT & JURY DEMAND**

*Valerie Anderson states the following claims for relief:*

### Jurisdiction

1.    This court has jurisdiction under the Truth In Lending Act, 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331,1337.

2.    This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims under 28 U.S.C. § 1367.

### Parties

3.    The Plaintiff to this lawsuit is Valerie Anderson who resides in Dearborn Heights, MI.

4.    The Defendants to this lawsuit are as follows:

    a.    Cars Trade, Inc. ("CTI") which is a corporation doing business in Michigan at 32420 Michigan Ave., Wayne, MI 48184, and whose resident agent Abbas Gebara maintains its office at 32420 Michigan Ave., Wayne, MI 48184, and which by statute and condition of licensing, may be served through the Michigan Department

1

of State, Compliance Division, 3rd Floor – Treasury Building, 430 W. Allegan Street, Lansing, MI 48918.

## Venue

5. The transactions and occurrences which give rise to this action occurred in Wayne County.

6. Ms. Anderson is a citizen of the State of Michigan and resides in Wayne County.

7. Venue is proper in the Eastern District of Michigan.

## General Allegations

8. On August 31, 2016, Ms. Anderson was glancing at a car in the Cars Trade, Inc. ("CTI") car lot.

9. While in the parking lot, Joe Gebara ("Mr. Gebara"), an employee of CTI, approached Ms. Anderson about the 2009 Honda Accord and they discussed the price of $6,450.00.

10. Mr. Gebara led Ms. Anderson to the sales office to prepare the Retail Installment Contract.

11. CTI requested that Ms. Anderson complete a credit application.

12. On August 31, 2016, Ms. Anderson completed that credit application accurately and truthfully.

13. CTI informed Ms. Anderson that her credit application was being acted on by Credit Acceptance Corporation ("CAC").

14. CTI informed Ms. Anderson that she had been approved for credit and that CAC would purchase the installment contract from CTI at the time of the sale.

15. CTI is a creditor for purposes of the Truth in Lending Act, 15 U.S.C. § 1640 *et. seq.*

16. On August 31, 2016, Ms. Anderson executed a retail installment contract with CTI for a 2009 Honda Accord, VIN# 1HGCP26319A016352 ("the vehicle") (see attached Exhibit A --

"retail installment contract").

17. Ms. Anderson traded in her 2007 Hyundai Sonata, VIN 5NPEU46F27H157121 in order to obtain the 2009 Honda Accord.

18. CTI presented purchase documents identifying itself as the installment seller and creditor for purposes of the Truth in Lending Act, 15 U.S.C. §1602 *et seq*.

19. CTI identified Credit Acceptance Corporation as the lien holder and assignee of Ms. Anderson's retail installment sale contract.

20. Prior to executing the Retail Installment Contract, CTI made the following material representations ("material representations") which also constituted an express warranty and related to the vehicle: The price of the vehicle is $6,450.00.

21. After executing the Retail Installment Contract, CTI made the following material representations:

   a. The price of the vehicle differs based on whether consumers pay with cash or finance;

   b. The $6,450.00 price was the cash price, not the finance price; and

   c. That the variance between the cash price and finance price is finance charges.

22. Ms. Anderson only received the first two pages of a five page Retail Installment Contract.

23. The Retail Installment Contract does not have Ms. Anderson's ink signature but rather an electronic signature.

24. The Retail Installment Contract falsely disclosed an Annual Percentage Rate of 22.99% when the actual Annual Percentage Rate applied to Ms. Anderson's purchase was 50.36%. (Exhibit 2, 3, and 4.)

25. The Retail Installment Contract falsely disclosed a Finance Charge of $4,225.27 when the actual Finance Charge applied to Ms. Anderson's purchase was $6,825.27[1]. (Exhibit 2, 3, and 4.)

26. The Retail Installment Contract falsely disclosed an Amount Financed of $7,340.00 when the actual Amount Financed by Ms. Anderson's purchase was $4,043.00. (Exhibit 2, 3, and 4.)

27. The Retail Installment Contract falsely disclosed Ms. Anderson's cash down-payment as $300.00 plus a trade-in of $2,750, netting a total down-payment of $3,050, when her actual cash down-payment was $150.00 plus a trade-in of $2,750, netting a total actual down-payment of $2,900.00. (Exhibit 2, 3, and 4.)

28. The Retail Installment Contract falsely disclosed a Total Sale Price of $14,615.27 when the actual Total Sale Price was $14,465.27[2]. (Exhibit 2, 3, and 4.)

### COUNT I – Truth In Lending Act (CTI)

29. Ms. Anderson incorporates the preceding allegations by reference.

30. At all relevant times CTI – in the ordinary course of its business – regularly extended or offered consumer credit for which a finance charge is, or may be imposed or which, by written agreement is payable in more than 4 installments and is the person to whom the transaction which is the subject of this action is initially payable, and is a "creditor" under TILA, 15 U.S.C. § 1602(f) and regulation Z § 226.2(a)(17).

---

[1] A variance of $2,600.00.

[2] The difference of $150.00 ($14,615.27 less $14,465.27) is attributable to the difference in the cash down payment - Plaintiff tendered $150.00 in cash but Defendants recorded $300.00.

31. CTI holds a license as a retail instalment seller of motor vehicles under to M.C.L. § 492.101 *et seq*.

32. CTI identifies itself as the "creditor" in every credit transaction in which it engages where it executes a retail installment sales contract with a customer.

33. CTI made statements directly contradictory to the TILA disclosure which had the natural effect of undercutting the operative disclosures and rendering them unclear and misleading.

34. CTI failed to accurately disclose the Cash Down Payment Amount by disclosing $300.00 when Plaintiff only tendered $150.00. (Exhibit 2, 3, and 4.)

35. CTI failed to accurately disclose the cash price of the vehicle stating the Motor Vehicle Cash Price as $9,200.00 rather than the true price $6,450.00; the difference of which was a finance charge. (Exhibit 2, 3, and 4.)

36. The failure to accurately disclose the cash price of the vehicle consequently caused a failure to accurately disclose the amount financed in violation of 15 U.S.C. § 1638; 16 CFR § 226.18 (b) and (c).

37. CTI failed to accurately disclose the finance charge assessed, disclosing a finance charge of $4,225.27 rather than the true finance charge of $6,825.27[3].

38. CTI failed to accurately disclose the amount financed, disclosing an amount financed of $7,340.00 rather than the true amount financed of $4,740.00[4].

39. CTI improperly itemized a charge in the amount of $2,600.00 as an amount financed when in fact that charge was a finance charge within the meaning of Reg Z § 226.4.

---

[3] A variance of $2,600.00.

[4] A variance of $2,600.00.

40. CTI failed to accurately disclose the applicable finance charge as required by 15 U.S.C. § 1638 and Reg Z § 226.18(d).

41. CTI failed to accurately disclose and itemize the amount financed in violation of 15 U.S.C. § 1638, Reg Z § 226.18(b), and Reg Z § 226.18(c).

42. As a consequence of failing to accurately state the actual finance charge, CTI also misstated the applicable "APR", disclosing 22.99% rather than the true "APR" of 50.36%, in violation of 15 U.S.C. § 1338 and Reg Z § 226.18(e).

43. CTI failed to accurately disclose the applicable "APR" as required by 15 U.S.C. § 1638, Reg Z § 226.18(32), and Reg Z § 226.22.

44. Ms. Anderson suffered damages as a result of these violations of the TILA.

### COUNT II – Motor Vehicle Sales Finance Act (CTI)

45. Ms. Anderson incorporates the preceding allegations by reference.

46. This claim is brought under the Michigan Motor Vehicle Sales Finance Act ("MVSFA"), M.C.L. §492.101 *et seq*.

47. In violation of M.C.L. § 492.113(a) of the MVSFA, CTI inaccurately reported the cash price of the vehicle as $9,200.00 and failed to accurately report the cash price of the vehicle as $6,450.00. (Exhibit 2, 3, and 4.)

48. In violation of M.C.L. § 492.113(b) of the MVSFA, CTI inaccurately reported the cash down payment as $300.00 and failed to accurately report the cash down payment as $150.00. (Exhibit 2, 3, and 4.)

49. In violation of M.C.L. § 492.113(b) of the MVSFA, CTI inaccurately reported the total down payment as $3,050.00 and failed to accurately report the total down payment as $2,900.00.

(Exhibit 2, 3, and 4.)

50. In violation of M.C.L. § 492.113(c) of the MVSFA, CTI inaccurately reported the unpaid balance as $6,643.00 and failed to accurately report the unpaid balance as $4,4043.00. (Exhibit 2, 3, and 4.)

51. In violation of M.C.L. § 492.113(g) of the MVSFA, CTI inaccurately reported the principal amount financed as $7,340.00 and failed to accurately report the principal amount financed as $4,740.00. (Exhibit 2, 3, and 4.)

52. In violation of M.C.L. § 492.113(h) of the MVSFA, CTI inaccurately reported the finance charge as $4,225.27 and failed to accurately report the finance charge as $6,825.27. (Exhibit 2, 3, and 4.)

53. CTI imposed upon Ms. Anderson charges which are not authorized by the MVSFA in violation of M.C.L. § 492.113, *et seq*.

54. In violation of M.C.L. § 492.118(a) of the MVSFA, CTI imposed a finance charge upon Ms. Anderson in excess of 50% which is in excess of the finance charge rate permitted by the credit reform act, 1995 PA 162, M.C.L. 445.1851 to 445.1864.

55. Ms. Anderson suffered damages as a result of these violations of the MVSFA.

### COUNT III – Motor Vehicle Installment Sales Contract Act (CTI)

56. Ms. Anderson incorporates the preceding allegations by reference.

57. This claim is brought under the Michigan Motor Installment Sales Contract Act, M.C.L. § 566.301 *et seq*, which will be referred to as the MVISCA throughout the remainder of this complaint.

58. In violation of M.C.L. § 566.302 of the MVISCA, CTI inaccurately reported the cash price

of the vehicle as $9,200.00 and failed to accurately report the cash price of the vehicle as $6,450.00. (Exhibit 2, 3, and 4.)

59. In violation of M.C.L. § 566.302 of the MVISCA, CTI inaccurately reported the cash down payment as $300.00 and failed to accurately report the cash down payment as $150.00. (Exhibit 2, 3, and 4.)

60. In violation of M.C.L. § 566.302 of the MVISCA, CTI inaccurately reported the total down payment as $3,050.00 and failed to accurately report the total down payment as $2,900.00. (Exhibit 2, 3, and 4.)

61. In violation of M.C.L. § 566.302 of the MVISCA, CTI inaccurately reported the unpaid balance as $6,643.00 and failed to accurately report the unpaid balance as $4,4043.00. (Exhibit 2, 3, and 4.)

62. In violation of M.C.L. § 566.302 of the MVISCA, CTI inaccurately reported the principal amount financed as $7,340.00 and failed to accurately report the principal amount financed as $4,740.00. (Exhibit 2, 3, and 4.)

63. In violation of M.C.L. § 566.302 of the MVISCA, CTI inaccurately reported the finance charge as $4,225.27 and failed to accurately report the finance charge as $6,825.27. (Exhibit 2, 3, and 4.)

64. Ms. Anderson suffered damages as a result of this violation of the MVISCA.

### COUNT IV – Michigan Credit Reform Act (CTI)

65. Ms. Anderson incorporates the preceding allegations by reference.

66. This claim is brought under the Credit Reform Act, M.C.L. § 445.1851 *et seq*, which will be referred to as the CRA throughout the remainder of this complaint.

67. CTI is a regulated lender within the meaning of the CRA, M.C.L. § 445.1851 *et seq.*

68. CTI imposed upon Ms. Anderson an "APR" in excess of 25% and accordingly, in excess of that authorized by the CRA, M.C.L. § 445.1851 *et seq.*

69. Ms. Anderson suffered damages as a result of these violations of the CRA.

**COUNT V – Michigan Regulation of Collection Practices Act ("MRCPA") (CTI)**

70. Ms. Anderson incorporates the preceding allegations by reference.

71. This claim is brought under the Regulation of Collection Practices Act, M.C.L. §445.251 *et seq*, which will be referred to as the MRCPA throughout the remainder of this complaint.

72. CTI is a regulated person within the meaning of the MRCPA, M.C.L. §445.251 *et seq.*

73. Ms. Anderson is a "consumer" or "debtor" as defined by M.C.L. §445.251 *et seq.*

74. CTI made inaccurate, misleading, untrue and/or deceptive statements and/or claims in communications to collect a debt and/or conceal and/or not reveal the purpose of the communications when it made them in connection with collecting a debt in violation of M.C.L. §445.252(e).

75. In violation of M.C.L. §445.252(f), CTI misrepresented communications with Ms. Anderson regarding the following:

    a. The legal status of a legal action being taken or threatened;

    b. The legal rights of the creditor or debtor; and,

    c. That the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment, or sale of the debtor's property.

76. Ms. Anderson suffered damages as a result of these violations of the MRCPA.

## JURY DEMAND

77. Valerie Anderson demands a jury trial in this case.

## REQUEST FOR RELIEF

Plaintiff requests that this Honorable Court grant the following relief:

a. *Assume jurisdiction over this case including all supplemental claims.*

b. *Actual damages for items including emotional distress, mental aguish, frustration, humiliation, and embarrassment.*

c. *Award statutory and punitive damages.*

d. *Award statutory costs and attorney fees.*

Respectfully Submitted,

By: s/ Sylvia S. Bolos
Sylvia S. Bolos P78715
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney For Valerie Anderson
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
SylviaB@MichiganConsumerLaw.Com

Dated: June 16, 2017